NICHOLAS A. KNOX, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

*New York city — claim made by a salaried employee thereof, for compensation for taking as a commissioner of deeds affidavits by direction of his superiors — testimony that it was not a part of the employee's duty held to be incompetent.*

What evidence given in an action brought against the city of New York, by a person employed at an annual salary as a clerk in the office of the commissioner of jurors of that city, to recover for services rendered by him as a commissioner of deeds in taking, pursuant to the direction of his superiors, the affidavits of subpœna servers employed in the office, indicates that he rendered such services without any intention of charging the city therefor, or, if not, that he deliberately concealed such intention for the purpose of misleading his superiors and retaining his position, considered.

The testimony of the deputy commissioner of jurors that the taking of the affidavits in question was not a part of the plaintiff's duties is a mere legal conclusion and is incompetent.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of April, 1902, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of May, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Chase Mellen,* for the appellant.

*Alfred J. Talley,* for the respondent.

LAUGHLIN, J.:

This is an action to recover fees for services of plaintiff as commissioner of deeds. The complaint alleges that from the 6th day of March, 1895, to the 1st day of February, 1898, the plaintiff, at the request of the commissioner of jurors of the city and county of New York, took 2,543 affidavits as commissioner of deeds "in divers cases of delinquent jurors, the reasonable and legal charge for which is twelve cents for each affidavit," amounting to $305.16, "which is now justly due and owing to the plaintiff." These allegations were put in issue by the answer. It is further alleged in the 4th subdivision of the complaint that the plaintiff's claim has been filed

with the comptroller; that more than thirty days have elapsed
since the filing thereof and that the "said sum is now due and
justly owing to the plaintiff herein, no part of which has been paid,
although the same has been duly demanded." These allegations
are admitted. The defendant pleads the further defense of waiver
on the part of the plaintiff of any right to compensation. On the
trial the taking of 2,539 affidavits by the plaintiff, "at the request
of his superiors," was admitted. The plaintiff testified that they
were taken between the 25th day of March, 1896, and the 1st day
of February, 1898. The claim was filed on the 12th day of
December, 1901. Upon the trial counsel for the defendant con-
ceded that if it was liable at all, it was liable for the fees for taking
the 2,539 affidavits, and thereupon the court inquired, "Is your
sole defense here a waiver?" to which the defendant's counsel
answered, "Yes, that is all." The defendant offered no evidence,
but at the close of the case moved for a dismissal of the complaint
on the ground that the plaintiff had failed to prove a cause of action
and that his own testimony showed a waiver of any right to com-
pensation for such services. The motion was denied and the defend-
ant's counsel duly excepted. The court in charging the jury stated
that it was conceded that these affidavits were taken by the plaintiff
"at the request of the defendant, the City of New York, through
its proper officers," and instructed the jury that the plaintiff was
entitled to recover his fees therefor "unless you believe that he
waived his claim against the city." No exception to this charge
was taken by the defendant. The court then instructed the jury
that the burden of establishing the defense of waiver was upon the
city and that the plaintiff was entitled to recover unless the defend-
ant had satisfied them "by a preponderance of creditable evidence
that there was a waiver or an agreement to do the work for nothing."

The plaintiff was appointed register clerk in the office of the
commissioner of jurors on the 12th or 15th day of March, 1895, and
about a year thereafter he became chief clerk, which position he
held until February, 1898. He received an annual salary from the
city, and the affidavits were taken in the office of the commissioner
of jurors and during the time he held these respective positions.
The plaintiff testified that about a year before entering the employ

of the city he obtained the appointment as commissioner of deeds for the purpose of taking affidavits "to enroll people in the primaries;" and that he never made a charge for affidavits thus taken to enroll people. Speaking generally, he said, "probably I have made one or two charges for my services, but generally I did it out of courtesy and I didn't charge for it." He further testified that he paid the original charge for qualifying as commissioner of deeds and for all subsequent renewals out of his own funds; that six or seven months after he entered the employ of the city he was asked "as commissioner of deeds * * * to acknowledge the subpœna servers, what we call the return of service;" that these subpœna servers were employees in the same office; that he was never paid "for any of these affidavits;" that he was not told when he entered the city's employ that any services would be required of him as commissioner of deeds or that it was any part of his duty to take such affidavits; that he never had any conversation with the commissioner or deputy commissioner of jurors regarding compensation for these services; that prior to filing his claim he made no demand or request for payment for such fees upon his superiors or any officer of the city; that sometimes the commissioner asked him to take the affidavits and at other times the deputy commissioner; that the affidavits were to the effect that the subpœna servers "had performed their duty," and that these subpœna servers would come before him or some other person in the office and make the affidavits; that after he had been taking affidavits for some time "there was some talk in the office, and one man kept account of them; he said some day this thing will come in handy, and he kept an account;" that the rest of the employees laughed at this man, and "we didn't think anything of it at the time;" that he kept no memorandum of the affidavits taken; that the fact of seeing this man keep a memorandum he thought "showed that some day we might get our money; but I never took any steps in it until I filed this claim." He was asked whether he expected to be paid for these services, and he replied, "I don't know; I was willing to take it if I could get it; I thought we ought to have it." He further testified that he never asked the commissioner to certify any bill for these fees; that "I understood somebody was suing the city and I waited to see how they made out," and that all of them did the

same thing; that this was in the year 1897; that "the fact of this man talking about it gave us an idea that there might be something come up;" that he never asked the commissioner or deputy commissioner to pay the fee for the renewal of his commission or said anything to either of them about it. The deputy commissioner of jurors testified that he directed the plaintiff to take the affidavits; that "those affidavits were necessary for the conduct of the office," and that it was no part of the duties of the plaintiff or other employees to take the affidavits, but he further testified, "I was authorized by the commissioner of jurors to assign the employees of the office to their various stations and I had a right to tell Mr. Knox to act as chief clerk and to take these affidavits."

This comprises the material testimony offered upon the trial. It is manifest that the plaintiff's claim is unjust, but it is somewhat difficult to protect the city upon this record. The city first denied the employment of the plaintiff as commissioner of deeds, and this would have left the burden upon him of showing employment by some one authorized to incur the indebtedness on behalf of the city; but subsequently, by admitting the 4th subdivision of the complaint, the city has jeopardized its rights under this denial, and its position was not improved by the admission that its only defense was a waiver, and by its failure to except to the charge that the affidavits were taken at the request of the city through its proper officers. The plain inference is, however, that there was no appropriation for fees of commissioner of deeds during any of this period and that no employee in the office of the commissioner of jurors received any compensation for such services. It does not appear that the commissioner of jurors or his deputy was required by law to have these affidavits taken or was authorized to incur liability on the part of the city therefor. For aught that appears these affidavits, had it been known by the commissioner of jurors or his deputy that fees were to be charged for taking the same, might have been dispensed with. It is also evident that it would have been entirely competent for the commissioner of jurors or his deputy to have required the rendition of these services by the employees of the department as an incident to their salaried positions and without further compensation. The testimony of the deputy commissioner that the taking of these affidavits was no part of the duties of the

plaintiff is a mere legal conclusion, and it was incompetent and should have been excluded had objection been taken thereto. The city was entitled to the plaintiff's time and services and might have required him or any of the employees to take the affidavits without compensation or have discharged them on their refusal so to do. It is quite evident that this is the reason that these employees concealed from the commissioner of jurors and his deputy their intention, if any they had, of some day making a claim on account of fees as commissioners of deeds.

When the Legislature by section 55 of the Consolidation Act (Laws of 1882, chap. 410) and section 1549 of the Greater New York charter (Laws of 1897, chap. 378), permitted officers and employees of the city to hold the office of notary public or commissioner of deeds, we think it was not contemplated that extra compensation should be paid for such services rendered by them during the time which belonged to the city and for which they were paid by regular salaries. It rather contemplated that the convenient transaction of the business of the municipality required that certain officers and employees should be notaries or commissioners of deeds. While there is some degree of formality with reference to the appointment of a notary public and the fees for qualifying are something more than nominal and the number is limited, such is not the case with the office of commissioner of deeds. Commissioners of deeds are appointed by resolution of the municipal bodies, made as a matter of course upon request, and the fee for qualifying is only nominal. There is no justice or propriety in allowing city officials or employees additional compensation for services of this character rendered in the city department in connection with city business and during the time for which they are fully compensated by prescribed salaries.

The case of *Merzbach* v. *Mayor* (163 N. Y. 16) is not controlling. There an appropriation had been made for the fees of notaries and commissioners of deeds, and the district attorney was authorized to expend that appropriation in payment of such fees where the services of such officials were required by law in the execution of papers connected with the administration of justice in his department; and Merzbach rendered the services on the express understanding that he was to be paid his fees therefor. However,

owing to the admissions of the city, to which attention has been called, it is doubtful whether any question in this case is open to our review except the question as to whether the verdict is against the weight of evidence. The order shows that the city moved for a new trial on the ground that the verdict was against the weight of the evidence. We think this motion should have been granted. The plaintiff's own testimony clearly indicates that he rendered these services without any intention of charging the city therefor. If not, then he deliberately concealed such intention for the purpose of misleading his superiors and retaining his position. In neither event should he be permitted to recover.

The judgment and order should, therefore, be reversed, and a new trial granted, with costs to appellant to abide the event.

Van Brunt, P. J., Patterson, Ingraham and Hatch, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.